No. 11-56259
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____


K.M., a minor, by and through her Guardian Ad Litem, LYNN BRIGHT,
Plaintiff- Appellant,

v.

TUSTIN UNIFIED SCHOOL DISTRICT,
Defendant-Appellee.


_____


Appeal from the U. S. District Court for the Central District of California
District Court Case No. SACV 10-1011 DOC (MLGx)
Honorable David O. Carter, United States District Judge

_____


**BRIEF OF AMICUS CURIAE ALEXANDER GRAHAM BELL
ASSOCIATION FOR THE DEAF AND HARD OF HEARING IN SUPPORT
OF PLAINTIFF-APPELLANT K.M., A MINOR, BY AND THROUGH HER
GUARDIAN AD LITEM, LYNN BRIGHT**

_____

Molly S. Askin
Baker Botts L.L.P.
1299 Pennsylvania Avenue NW
Washington, D.C. 20004
202.639.7700

*Counsel for Amicus Curiae Alexander
Graham Bell Association for the Deaf
and Hard of Hearing*

# TABLE OF CONTENTS Page

STATEMENT OF INTEREST ................................................................... 1

SUMMARY OF ARGUMENT ................................................................. 3

ARGUMENT ......................................................................................... 3

I. ACCESS TO ORAL COMMUNICATIONS IS
AN ESSENTIAL PART OF EDUCATION ................................................. 3

II. THE DISTRICT COURT ERRED IN FAILING TO PROPERLY
DISTINGUISH BETWEEN ADA AND
IDEA REQUIREMENTS ............................................................................ 7

    A. The elements of an ADA claim are distinct from an IDEA claim ........ 7

    B. The purpose of the IDEA is distinct from the purpose of the
ADA ....................................................................................................... 9

III. THE DISTRICT COURT ERRED IN FAILING TO ANALYZE
PLAINTIFF'S ADA CLAIM IN ACCORDANCE WITH
THIS COURT'S PRECEDENT ................................................................... 11

IV. THE SCHOOL DISTRICT VIOLATED THE ADA ................................... 12

    A. K.M. did not receive communication access as required by the
ADA ..................................................................................................... 13

    B. The school district did not "ensure that communications" with
K.M. were "as effective as communications with others" as
required by 28 C.F.R. § 35.160(a)(1) ................................................. 14

    C. The district court erred by not requiring defendant to establish that
it gave "primary consideration to the requests of" K.M., an
individual with a disability ................................................................. 15

CONCLUSION ........................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.,*
603 F.3d 666 (9th Cir. 2010) ...................................................................6, 12, 13

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,*
458 U. S. 176 (1982)........................................................................................9

*D.F. v. Western Sch. Corp.,*
921 F. Supp. 559 (S.D. Ind. 1996)..................................................................8

*Duffy v. Riveland,*
98 F.3d 447 (9th Cir. 1996) ...........................................................................11

*Duvall v. Cnty. of Kitsap,*
260 F.3d 1124 (9th Cir. 2001) ..............................................................6, 11, 13

*Ellenberg v. N. M. Military Inst.,*
478 F.3d 1262 (10th Cir. 2007) .......................................................................7

*Ellenberg v. N. M. Military Inst.,*
572 F.3d 815 (10th Cir.), *cert. denied*, 130 S. Ct. 1016 (2009) ..........................9

*K.M. ex rel. Bright v. Tustin Unified School Dist.,*
No. SACV 10-1011 DOC (MLGx), 2011 WL 2633673,
(C.D. Cal. July 5, 2011)............................................................................*passim*

*Lentini v. Cal. Ctr. for the Arts,*
370 F.3d 837 (9th Cir. 2004) ..........................................................................13

*Marvin H. v. Austin Indep. Sch. Dist.,*
714 F.2d 1348 (5th Cir. 1983) ..........................................................................7

*McGary v. City of Portland,*
386 F.3d 1259 (9th Cir. 2004) ........................................................................10

*Petersen v. Hastings Public Sch.,*
831 F. Supp. 742 (D. Neb. 1993).....................................................................14

*R.P. ex rel. C.P. v. Prescott Unified Sch.Dist.*,
    631 F.3d 1117 (9th Cir. 2011) .............................................................7

*Soto v. City of Newark*,
    72 F. Supp.2d 489 (D.N.J. 1999)......................................................12

*Walton v. U.S. Marshals Serv.*,
    492 F.3d 998 (9th Cir. 2007) .............................................................12

## STATUTES

20 U.S.C. § 1400(d)(1)(A).....................................................................9

20 U.S.C. § 1412(a)(1)(A).....................................................................9

20 U.S.C. § 1415(1)..............................................................................10

42 U.S.C. § 12101 (a)(2)-(3).................................................................10

42 U.S.C. § 12101(b)(1) .......................................................................10

42 U.S.C. § 12102(1) & (2) ..................................................................12

42 U.S.C. § 12132................................................................................11

## REGULATIONS

28 C.F.R § 35.150(a) ...........................................................................12

28 C.F.R. § 35.160(a)(1).......................................................................14

28 C.F.R. § 35.160(b)(2).......................................................................15

## OTHER AUTHORITIES

Aaron Steinfeld, "*The Benefit of Real-Time Captions in a Classroom
    Environment.*" (Dissertation, U. Mich. 1999) ......................................5

Howard A. Rosenblum, *Communication Access Funds: Achieving the Unrealized Aims of the Americans with Disabilities Act*, 45 Val. U. L. Rev. 1061 (2011) ................................................................................6

J. Boyd and E. A. Vader, "Captioned television for the deaf." *American Annals of the Deaf*, 117, 34-37 (1972) ................................................................4

John F. Stanton, *Breaking the Sound Barriers: How the Americans With Disabilities Act and Technology Have Enabled Deaf Lawyers to Succeed*, 45 Val. U. L. Rev. 1185 (2011) ...........................................................4, 5, 6, 15

Michael Stinson et al., "Real-Time Speech-to-Text Services," (2009)....................6

Virginia Murphy-Berman and Julie Jorgensen, "Evaluation of a multilevel linguistic approach to captioning television for hearing-impaired children." *American Annals of the Deaf*, 125 (1980) ..........................................4

**STATEMENT OF INTEREST**

Pursuant to Federal Rule of Appellate Procedure 29, the Alexander Graham Bell Association for the Deaf and Hard of Hearing ("A.G. Bell") respectfully submits this brief in support of Appellant K.M., a minor, by and through her Guardian Ad Litem, Lynn Bright. A.G. Bell is a non-profit organization based in the District of Columbia. It has chapters throughout the United States and international affiliates worldwide.

One of the oldest and preeminent organizations in deafness, A.G. Bell uses advocacy, education, research, and financial aid to help ensure that every child and adult with hearing loss has the opportunity to listen, talk and thrive in mainstream society. A.G. Bell provides advocacy and resources for parents, professionals, and individuals who are deaf or hard of hearing. In addition, A.G. Bell's subsidiary, the A.G. Bell Academy for Listening and Spoken Language, provides certification for audiologists, speech-language pathologists, and teachers of the deaf, known as Listening and Spoken Language Specialists (LSLS[TM]).

A.G. Bell has long advocated for accessibility under the Americans with Disabilities Act ("ADA"). A.G. Bell has participated as *amicus curiae* in several disability access cases, including cases involving interpreting in health care,

1

entertainment, and classroom settings.  A.G. Bell believes that its views can inform this Court and assist the Court in arriving at the correct decision in this appeal.[1]

All parties have consented to the filing of this brief.

---

[1] This brief focuses on the ADA issue. While we have taken efforts to keep repetition to a minimum, some overlap in the arguments made by Plaintiffs was unavoidable.

## SUMMARY OF ARGUMENT

The district court erred in failing to properly analyze K.M.'s ADA claim. In particular, the district court did not follow applicable precedent in analyzing an ADA Title II claim. The court compounded its error by failing to distinguish between the requirements of the ADA and the Individuals with Disabilities Education Act ("IDEA"). K.M. should not have been excluded from participating in school and understanding her teachers and classmates because she was unable to hear. K.M. was not provided with an effective aid or otherwise permitted to access oral communications in her public school, as required by the ADA. This Court should reverse the judgment below and remand the case for additional proceedings.

## ARGUMENT

## I.    ACCESS TO ORAL COMMUNICATIONS IS AN ESSENTIAL PART OF EDUCATION.

In mainstream schools, communication is usually delivered orally, rather than visually. Without captioning or interpreting, many, if not most, students who are deaf and hard of hearing struggle to understand spoken language in mainstream schools. This is particularly true when the student does not know sign language, but primarily speaks and lip-reads (also known as speechreads), as A.G. Bell understands to be the case with K.M. A speechreader can only focus on one speaker at a time and must have a direct view of the speaker's lips. This is frequently not possible in classrooms or in other school settings. Because of these

challenges, "for a deaf person to simply sit in the front of the class and attempt to read the [teacher's] lips is of extremely limited utility from a learning standpoint." John F. Stanton, *Breaking the Sound Barriers: How the Americans With Disabilities Act and Technology Have Enabled Deaf Lawyers to Succeed*, 45 Val. U. L. Rev. 1185, 1190 (2011).

Students who are deaf[2] who struggle to understand oral communications are helped tremendously by visual representations of oral communications. In the past several decades, studies have shown that real-time captioning technology helps students who are deaf learn more effectively. For example, studies have confirmed that deaf students reviewing captioned videos showed increased comprehension when compared to deaf students watching uncaptioned videos. *See, e.g.*, Virginia Murphy-Berman and Julie Jorgensen, "Evaluation of a multilevel linguistic approach to captioning television for hearing-impaired children." *American Annals of the Deaf*, 125, 1072-81 (1980). Captioning technology also helps students who are deaf perform better on tests. *See* J. Boyd and E. A. Vader, "Captioned television for the deaf." *American Annals of the Deaf*, 117, 34-37 (1972). Researchers have found that "it is apparent that the use of captions in classroom environments provide significant, measurable assistance

---

[2] References in this brief to students or individuals who are deaf also include students or individuals who are hard of hearing.

to a wide spectrum of students," including those who are deaf.  Aaron Steinfeld,

"*The Benefit of Real-Time Captions in a Classroom Environment*." (Dissertation,

U. Mich. 1999) at 7.[3]

The district court correctly found that K.M. could not understand spoken

language and, as a result, she could not participate at her school.  *See e.g., K.M. ex*

*rel. Bright v. Tustin Unified School Dist.*, No. SACV 10-1011 DOC (MLGx), 2011

WL 2633673, at *6 (C.D. Cal. July 5, 2011) (K.M. was "pretending to hear things

she does not hear in class"); *Id.* at *2 (K.M. "typically struggles to follow a teacher

about once a day");  *Id.* ("in some classes [K.M.] has trouble hearing student

discussion as often as every five minutes"); *Id.* at *4 (K.M. "admitted to feeling

uncomfortable speaking out in class because of her uncertainty as to what other

students have said").   Other individuals who are deaf have voiced similar

frustrations when they do not have captioning or interpreting available at school.

*See, e.g.*, Stanton, *supra*, at 1190-91 & nn.20-23 (giving examples of deaf students'

frustrations of not being able to understand what was said in class without

Communication Access Realtime Translation (CART) interpreting).

K.M.'s preference for CART interpreting (i.e., captioning) is common

among individuals who are deaf.  *See id*. at 1227-30 (noting that CART has been

---

[3] Available at http://www.cs.cmu.edu/~astein/pub/AS_RTCdiss.pdf.  Last visited
January 20, 2012.

embraced by many students who are deaf since it was invented in the early 1990s).

CART has also been shown to be more effective for deaf students than other types

of interpreting. *See id.* at 1196-97 (noting advantages of CART interpreting over

other forms of interpreting in classrooms); Michael Stinson et al., "Real-Time

Speech-to-Text Services," (2009) at 7 ("A majority of the students reported that

they understood more from the steno-based text display than from interpreting,"

noting that "when used in schools, [a steno-based text] system is often called

CART" *id.* at 2).[4]  CART is also a preferred and standard method of

communicating for individuals who are deaf in settings outside of the classroom.

*See* Howard A. Rosenblum, *Communication Access Funds: Achieving the*

*Unrealized Aims of the Americans with Disabilities Act*, 45 Val. U. L. Rev. 1061,

1065 (2011) ("Sign language interpreters and CART services are the standard

forms of auxiliary aids and services needed by the vast majority of deaf and hard of

hearing consumers who need any type of assistance in communicating with their

doctors and lawyers.").[5]

---

[4] Available at http://resources.pepnet.org/files/166_2009_5_14_17_07_PM.pdf.
Last visited January 20, 2012.

[5] This Court has held that the ADA requires captioning access for deaf patrons of
movie theaters. *See Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603
F.3d 666, 675 (9th Cir. 2010).  This Court has also held that captioning is required
in the courtroom for deaf litigants. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124,
1138 (9th Cir. 2001) (hearing-impaired plaintiff survived summary judgment on

## II.    THE DISTRICT COURT ERRED IN FAILING TO PROPERLY DISTINGUISH BETWEEN ADA AND IDEA REQUIREMENTS.

The ADA and IDEA have distinct purposes, histories, and legal requirements, and the district court should have analyzed K.M.'s ADA claim separately from her IDEA claim.  Failure to do so is reversible error.

### A.    The elements of an ADA claim are distinct from an IDEA claim.

Many courts -- including this Court -- have recognized that ADA claims must undergo a separate analysis from IDEA claims.  *See, e.g., R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1121-24 (9th Cir. 2011) (noting that the district court bifurcated the proceedings, separating the IDEA claims from the ADA and Rehabilitation Act claims);[6] *Ellenberg v. N. M. Military Inst.*, 478 F.3d 1262, 1267 (10th Cir. 2007) (recognizing that "plaintiffs' claims under the [Rehabilitation Act] and ADA are separate and distinct from the IDEA claim"); *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983) (ADA and Section 504 claimants need only show that "a school district has <u>refused</u> to provide reasonable accommodations" to state a cause of action, which is a different requirement than for an IDEA claim) (emphasis in original).  However, the district

---

claim that superior court filed to provide real-time captioning of oral testimony). The CART interpreting sought by K.M. is essentially captioning in the classroom.

[6] The ADA claims were dismissed in *R.P.* because plaintiffs failed to allege discrimination in their complaint, and they were not granted leave to amend.  In contrast, K.M. alleged discrimination in her complaint.  Compl. at ¶15.

court in this case found it "clear that K.M.'s claims under the ADA… fail on the merits for the same reasons that her claim under IDEA failed." *K.M.*, 2011 WL 2633673, at *14.

The district court cites a single case from a federal district court in Indiana to support the proposition that "courts entering summary judgment on IDEA claims have summarily dismissed accompanying Rehabilitation Act and ADA claims." *See id*. (citing *D.F. v. Western Sch. Corp.,* 921 F. Supp. 559, 574 (S.D. Ind. 1996)). However, the *D.F.* case differs significantly from this case.

In *D.F.*, the IDEA issue was whether a student was properly included or "mainstreamed" into public school education with non-disabled students. The student in *D.F.* had moderate to severe mental disabilities, "hydrocephalus, communication disorder, a seizure disorder, cerebral palsy, and visual problems." *D.F.,* 921 F. Supp. at 563. The student's parents brought an IDEA claim, which "imposes a presumption in favor of mainstreaming." *Id.* at 566. The ADA issue hinged on "whether D.F. meets the definition of a qualified individual with a disability" and "whether D.F. can be satisfactorily educated in a general education environment with supplemental aids and services." *Id.* at 574. The court held that plaintiffs did not meet their "burden of proof in challenging the Hearing Officer's decision that defendants have integrated [D.F.] into general education environments to the maximum extent appropriate." *Id.*

In this case, K.M. made a separate claim under the ADA, specifically that she "have access to oral communication at school." Compl. at ¶2. While some courts may have granted summary judgment on or dismissed IDEA claims and ADA claims brought in the same case, this fact does not excuse courts from properly analyzing an ADA claim.

**B.      The purpose of the IDEA is distinct from the purpose of the ADA.**

The IDEA seeks "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). In order to qualify for federal funding, states must ensure that students with disabilities can benefit from a free appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). An Individualized Education Program, or IEP, and the related process help to ensure that students receive a FAPE. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982). The IDEA does not address discrimination against students with disabilities. *Ellenberg v. N. M. Military Inst.*, 572 F.3d 815, 822 (10th Cir.), *cert. denied*, 130 S. Ct. 1016 (2009) (recognizing that "the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination").

In contrast, the ADA has a far broader purpose. It seeks to establish "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA seeks to end the "serious and pervasive social problem" of discrimination in American society. 42 U.S.C. § 12101 (a)(2)-(3). Importantly, the ADA is to be interpreted liberally, in favor of promoting accessibility. *See McGary v. City of Portland*, 386 F.3d 1259, 1668-69 (9th Cir. 2004). The ADA is separate and distinct from the IDEA.

The text of the IDEA also recognizes the difference between ADA and IDEA claims.

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(1).

While K.M. may have received some benefit from an IEP, she was denied access to oral communications -- the primary means of communication -- at her school. This type of case is why the ADA exists in addition to the IDEA.

### III. THE DISTRICT COURT ERRED IN FAILING TO ANALYZE PLAINTIFF'S ADA CLAIM IN ACCORDANCE WITH THIS COURT'S PRECEDENT.

Under Title II of the ADA, which applies to public schools, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This Court has established the proper analysis of an ADA claim brought against a public entity. The three-step inquiry is: (1) whether plaintiff "is a qualified individual with a disability;" (2) whether defendant excluded plaintiff from participation in or denied plaintiff the benefits of a service, program, or activity; and (3) whether the "exclusion, denial of benefits, or discrimination was by reason of [plaintiff's] disability." *Duvall*, 260 F.3d at 1135. *See also Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir. 1996).

The district court did not apply this three-step analysis in deciding the ADA claim brought by K.M. Instead, the court concluded that a failure "to show a deprivation of a FAPE under IDEA ... dooms her claim under Section 504, and, accordingly, her ADA claim." *K.M.*, 2011 WL 2633673, at *14. The court continued, "it is clear that K.M.'s claims under the ADA and the Rehabilitation Act fail on the merits for the same reasons that her claim under the IDEA failed."

*Id.* The court went no further in analyzing K.M.'s claims in light of applicable circuit precedent regarding ADA law.

K.M satisfied the three elements of an ADA claim. First, deafness is a disability under the ADA. *See* 42 U.S.C. § 12102(1) & (2); *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1007 (9th Cir. 2007); *see also Harkins*, 609 F.3d at 670 (defendants conceded that deaf patrons were "disabled" for ADA purposes). Second, K.M. was excluded from participation in her education because she could not hear her classmates or teachers. *See e.g., K.M.*, 2011 WL 2633673, at *5-6 (K.M. was "pretending to hear things she does not hear in class"); *Id.* at *2 (K.M. "typically struggles to follow a teacher about once a day"); *Id.* ("in some classes [K.M.] has trouble hearing student discussion as often as every five minutes"); *Id.* at *4 (K.M. "admitted to feeling uncomfortable speaking out in class because of her uncertainty as to what other students have said"). Finally, K.M. was excluded because of her disability.

## IV. THE SCHOOL DISTRICT VIOLATED THE ADA.

The ADA requires a covered entity, including public schools, to "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R § 35.150(a). Access and use is achieved by affirmatively providing accommodations for individuals with disabilities. *See, e.g.*, *Soto v. City*

*of Newark*, 72 F. Supp.2d 489, 496 n.12 (D.N.J. 1999) (rejecting defendant's argument that they need only treat deaf individuals "in the same fashion" as everyone else "misses the point of the ADA"); *Harkins*, 609 F.3d at 670-72 (rejecting movie theaters' argument that they need only allow deaf patrons physical access to theater and are not obligated to provide captioning as an accommodation). Indeed, this Court has made clear that failure to provide full access and/or to accommodate a disability constitutes illegal discrimination. *See id.*; *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 844-47 (9th Cir. 2004). K.M.'s public school was not accessible because she could not understand the oral communications provided by the school, and the school denied her access to those communications. Indeed, if individuals who are deaf need captioning to fully understand courtroom proceedings and movies in theaters, as this Court established in *Duvall* and *Harkins*, then surely the same must be true for deaf students at school.

## A.      K.M. did not receive communication access as required by the ADA.

The district court recognized that the school district "must consider the services necessary to ensure communication-accessible academic instructions, school services, and extracurricular activities consistent with Section 504 and the ADA." *K.M.*, 2011 WL 2633673, at *8. However, the lack of services provided to K.M. meant that she could not understand her teachers or classmates or participate

at school.  As mentioned above, K.M. regularly "struggle[d] to follow a teacher about once a day" and "in some classes ha[d] trouble hearing student discussion as often as every five minutes."  *Id.* at *2, 6.  K.M. could not participate in class because she could not understand her teachers or classmates, and she "admitted to feeling uncomfortable speaking out in class because of her uncertainty as to what other students have said." *Id.* at *4.

**B.**    **The school district did not "ensure that communications" with K.M. were "as effective as communications with others" as required by 28 C.F.R. § 35.160(a)(1).**

The district court erred because it did not require the school district to establish that communications with K.M. were "as effective as communications with others."  28 C.F.R. § 35.160(a)(1).  This requirement is essential to the protections offered by the ADA because, "[t]o truly end discrimination against persons with disabilities, some type of equally effective means of communication must be provided if the disabled persons' choice of auxiliary aid is denied." *Petersen v. Hastings Public Sch.*, 831 F. Supp. 742, 753 (D. Neb. 1993) (emphasis in original).  In fact, the evidence in the record is to the contrary.

As discussed above, K.M. could not hear or understand her teachers or other students when they were speaking, and she was not comfortable contributing at school because she could not understand spoken language.  *K.M.*, 2011 WL 2633673, at *2, 4, 6.  Since other students could understand words spoken by

teachers and classmates, the school district could not have established that communications with K.M. were as effective as communications with others.

**C.    The district court erred by not requiring defendant to establish that it gave "primary consideration to the requests of" K.M., an individual with a disability.**

Under the ADA, "a public entity shall give primary consideration to the requests of individuals with disabilities."  28 C.F.R. § 35.160(b)(2).  K.M. stated many times that she was not able to hear properly at school and requested CART to permit her to understand the oral communications at school.  *K.M.*, 2011 WL 2633673, at *3.  As discussed above, K.M.'s situation is not unusual.  Many other deaf students have been provided CART interpreting at school and marveled at how much oral communication they had been missing.  *See, e.g.*, Stanton, *supra*, at 1230, n.223.

The district court recognized that K.M.'s "difficulty following discussions may have been greater than her teachers perceived."  *K.M.*, 2011 WL 2633673, at *9.  While the lower court concluded that her inability to comprehend spoken language did not "necessarily suggest that K.M. was deprived of a FAPE," *id.*, it erred by not addressing whether the school district gave K.M.'s request for CART the consideration and analysis required under the ADA.

## CONCLUSION

The judgment below should be reversed, and the case remanded for further proceedings.

Dated:  January 23, 2012                    Respectfully submitted,

                                    _____/s/ Molly S. Askin_____

                                    Molly S. Askin
                                    Baker Botts L.L.P.
                                    1299 Pennsylvania Avenue NW
                                    Washington, D.C. 20004
                                    202.639.7700

                                    *Counsel for Amicus Curiae Alexander*
                                    *Graham Bell Association for the Deaf*
                                    *and Hard of Hearing*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus* Alexander

Graham Bell Association for the Deaf and Hard of Hearing certifies that it is a

registered 501(c)(3) nonprofit corporation.  It certifies that it has no parent

corporation and it has not issued shares of stock.


Dated:  January 23, 2012                          /s/ Molly S. Askin
                                        _____

                                        Molly S. Askin
                                        Baker Botts L.L.P.
                                        1299 Pennsylvania Avenue NW
                                        Washington, D.C. 20004
                                        202.639.7700

                                        *Counsel for Amicus Curiae Alexander*
                                        *Graham Bell Association for the Deaf*
                                        *and Hard of Hearing*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system on this 23rd day of January, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF service.

Dated: January 23, 2012         /s/ Molly S. Askin

Molly S. Askin
Baker Botts L.L.P.
1299 Pennsylvania Avenue NW
Washington, D.C. 20004
202.639.7700

*Counsel for Amicus Curiae Alexander Graham Bell Association for the Deaf and Hard of Hearing*

**CERTIFICATE OF COMPLIANCE**
**Pursuant to Federal Rule of Appellate Procedure 32(a) and Circuit Rule 32-1**
**For case No. 11-56259**


       Pursuant to Federal Rule of Appellate Procedure Rule 32(a)(7)(C) and Ninth

Circuit Rule 32-1, I certify that the attached amicus brief is proportionately spaced,

has a typeface of 14 points, and contains 3,322 words, including headings and

footnotes.


Dated:  January 23, 2012              _____/s/ Molly S. Askin_____