No. 11-56259

# IN THE UNITED STATES COURT
# OF APPEALS FOR THE NINTH CIRCUIT

K.M., a minor, by and through her Guardian Ad Litem, LYNN BRIGHT,
*Plaintiff-Appellant,*

v.

TUSTIN UNIFIED SCHOOL DISTRICT,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
Case No. 8:10-cv-01011-DOC-MLG
The Honorable David O. Carter, Judge Presiding

**AMICUS CURIAE BRIEF OF COUNCIL OF PARENT ATTORNEYS AND
ADVOCATES, INC. IN SUPPORT OF REVERSAL OF SUMMARY
JUDGMENT ORDER**

Angela C. Vigil
Michael N. Westheimer
Keith L. Wurster
Donna Williams
Nicole Calabro
Frank Spizzirri
BAKER & McKENZIE LLP
660 Hansen Way
Palo Alto, CA 94304-1044
Telephone: (650) 856-2400
Facsimile: (650) 856-9299

*Attorneys for Council of Parent Attorneys
and Advocates, Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

This statement is made pursuant to Federal Rule of Appellate Procedure 26.1.

Amicus Curiae has no parent corporation, subsidiaries or affiliates that have issued

shares to the public.

Dated:  January 24, 2012

Respectfully submitted,

/s/ Michael N. Westheimer
Michael N. Westheimer
One of the Attorneys for Amicus Curiae
Council of Parent Attorneys and
Advocates, Inc.

BAKER & McKENZIE LLP
660 Hansen Way
Palo Alto, CA 94304
(650) 856-2400

# TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF INTEREST ............................................................1

SUMMARY OF ARGUMENT ...........................................................................1

ARGUMENT ..................................................................................................3

I.     As A Matter Of Statutory Interpretation, Compliance With The FAPE Provisions Of The IDEA Does Not And Should Not Automatically Satisfy The Requirements Of ADA And Section 504 ....................................3

    A.     The Differing Purposes and Objectives of Section 504, the ADA and the IDEA ......................................................................................3

        1.     The IDEA .........................................................................3

        2.     Section 504 and the ADA ...............................................6

    B.     Under General Principles of Statutory Construction, the District Court's Finding that the IEP Satisfied FAPE Under the IDEA does not Eliminate K.M.'s Section 504 or ADA Claims ..............................9

II.     The Statutes And Regulations That Entitle Students To Separate And Distinct Protections Under The IDEA, Section 504 And The ADA Cannot Be Conflated Or Abrogated By Interpretive Court Opinions ...........13

    A.     Court Precedent Recognizes Separate and Distinct Rights and Remedies under the IDEA, Section 504 and the ADA ......................13

    B.     Portions of Court Opinions that Conflate the Rights and Remedies under the IDEA, Section 504 and ADA Fail to Address the Specific Regulatory Requirements of Section 504 and the ADA .......16

    C.     The Statutes and Regulations Should Be Harmonized so that Rights Afforded Students with Disabilities are not Abrogated ..........18

III.     As A Matter Of Public Policy, Dismissing An ADA Or Section 504 Claim Because A Child with A Disability Has Exercised The Right To An IEP Under The IDEA Impermissibly Denies The Additional

Protections Entitled To Under The ADA And Section 504 .......................... 20

CONCLUSION .......................................................................................... 22

**TABLE OF AUTHORITIES**

## CASES

*A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.,* 627 F.3d 773 (9th Cir. 2010)..................................................18

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) ...................................................................3

*Beisler v. Commissioner of Internal Revenue*, 814 F.2d 1304 (9th Cir. 1987) ...................................................................9

*Bishop v. Children's Center for Developmental Enrichment,* 2011 U.S. Dist. LEXIS 104664 (S.D. Ohio Sept. 15, 2011) ............................13

*Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176 (1982)..................................................5, 6, 12, 13

*D.F. v. Western Sch. Corp.*, 921 F. Supp. 559 (S.D. Ind. 1996) ............................2

*Digre v. Roseville Schs. Indep. Dist. No. 623*, 841 F.2d 245 (8th Cir. 1988) ...................................................................15

*Dowler v. Clover Park Sch. Dist.*, 258 P.3d 676 (Wa. 2011) ..................................9

*In re Lowenschuss*, 171 F.3d 673 (9th Cir. 1999) .................................................9

*JG v. Douglas County School District,* 552 F.3d 786 (9th Cir. 2008) ..................18

*Kungys v. United States*, 485 U.S. 759 (1988) .......................................................9

*M.M. v. Lafayette Sch. Dist.*, 2010 U.S. Dist. LEXIS 133294 at *7-15 (N.D. Cal. Dec. 6, 2010) ..................................................15

*Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008) .................................... *passim*

*Nieto v. Ecker*, 845 F.2d 868 (9th Cir. 1988)........................................................10

*Nieves-Marquez v. Puerto Rico*, 353 F.3d 108 (1st Cir. 2003) ..............................4

*Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir. 2011)....................9, 14, 15

*S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445 (6th Cir. 2008) .............................15

*Smith v. Robinson*, 468 U.S. 992 (1984) (superseded by statute).........................14

*Stephen L. v. Lemahieu*, 2000 U.S. Dist. LEXIS 22305 at*10 (D. Haw. Oct. 18, 2000)..........................................................15

*Witte by Witte v. Clark County School Dist.*, 197 F.3d 1271 (9th Cir. 1999) (overruled in part on other grounds by Payne, 653 F.3d at 871) ...................................................................................................15

**STATUTES**

20 U.S.C § 1400 *et seq.*.................................................................................1

20 U.S.C § 1412(a)(15)(A)(ii) .........................................................................6

20 U.S.C. § 1400(d)(1)(A) ...............................................................................4

20 U.S.C. § 1401(9) ....................................................................................4, 5, 7

20 U.S.C. § 1415(l) .....................................................................................10, 14

20 U.S.C. § 6311(B) ........................................................................................5

20 U.S.C. § 6311(b)(1)(B) ...............................................................................6

28 C.F.R, § 35.160(a) .....................................................................................20

28 C.F.R. § 35.160 .............................................................. 8, 11, 12, 19

28 C.F.R. § 35.160(b) ....................................................................................21

29 U.S.C. § 701 *et seq.*..................................................................................2

29 U.S.C. § 794 (Rehabilitation Act, Section 504) ...................................... *passim*

29 U.S.C. § 794(a) .........................................................................................21

29 U.S.C. § 794(b)(2)(B) ................................................................................6

34 C.F.R. § 104.33(b)(1)........................................................................ *passim*

34 C.F.R. § 104.33(b)(1)(i) .............................................................................19

34 C.F.R. § 104.33(b)(2)........................................................ 11, 12, 17, 19

34 C.F.R. § 104.34 .........................................................................................7

34 C.F.R. § 104.35 .........................................................................................7

34 C.F.R. § 104.36 .........................................................................................7

34 C.F.R. § 104.4 ...........................................................................................5

# TABLE OF AUTHORITIES
## (continued)

**Page**

34 C.F.R. § 200.1(a)................................................................5

34 C.F.R. § 200.1(b) ...............................................................5

34 C.F.R. § 200.1(c) ...............................................................5

42 U.S.C. § 12101 ..................................................................8

42 U.S.C. § 12131 *et seq*.......................................................1

42 U.S.C. § 12132..................................................................6

## OTHER AUTHORITIES

Mark C. Weber, "A New Look at Section 504 and the ADA in Special
Education Cases," TEXAS JOURNAL ON CIVIL LIBERTIES & CIVIL
RIGHTS, Vol. 16:1 (Fall 2010) ..............................................12, 16

<u>**CONCISE STATEMENT OF INTEREST**</u>

The *Council of Parent Attorneys and Advocates, Inc.* (COPAA) is a not-for-profit organization for parents of children with disabilities, their attorneys and advocates. COPAA believes the key to effective educational programs for children with disabilities lies in collaboration between parents and educators as equal parties. To this end, COPAA does not undertake individual representation for children with disabilities, but provides training and resources for advocates and attorneys to help each child obtain the free appropriate public education ("FAPE") and special education services and supports guaranteed by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C § 1400 *et seq.*, and other statutes. COPAA also assists children with disabilities in finding attorneys or advocates to represent them, and files amicus briefs on the IDEA and related issues.

All Parties have consented to the filing of this brief.

<u>**SUMMARY OF ARGUMENT**</u>

In this amicus brief, COPAA does not challenge the District Court's holding that Defendant's actions did not rise to the level of a violation of K.M.'s right to a FAPE under the IDEA. Op. at 14-19. Rather, COPAA challenges the District Court's legal conclusion that this automatically precludes the recovery for claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and/or the Rehabilitation Act, Section 504 ("Section 504"), 29 U.S.C.

§§ 701 *et seq.*, § 794.  The District Court summarily dismissed K.M.'s ADA and Section 504 claims, holding that:  "[T]he fact that K.M. has failed to show a deprivation of a FAPE under the IDEA, as discussed above, dooms her claims under Section 504, and, accordingly, her ADA claim."  Op. at 21, citing *D.F. v. Western Sch. Corp.*, 921 F. Supp. 559, 574 (S.D. Ind. 1996).  This legally erroneous analysis cannot stand.

First, the intent and language of the statutes and implementing regulations do not support the conclusion that satisfying the requirements of the IDEA mandate a finding of compliance with the separate and distinct requirements of Section 504 or the ADA.  Second, this Court's precedent and its progeny recognize the statutes are distinct, and therefore must be independently analyzed.  Third, public policy mandates affording children with disabilities the full benefit that all three statutes convey, not just the floor provided by one of them.  Appellant's Opening Brief extensively addressed the District Court's denial of K.M.'s ADA claims and Unruh Act claims, and Amicus fully supports such arguments.  Given that Appellant has focused on such claims, Amicus address the reversal of the District Court's summary rejection of the Section 504 claims and the related reasons for reversal of the denial of the ADA claims.

## <u>ARGUMENT</u>

I.  **As A Matter Of Statutory Interpretation, Compliance With The FAPE Provisions Of The IDEA Does Not And Should Not Automatically Satisfy The Requirements Of ADA And Section 504**

As with any other statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (citation omitted). The decision by the District Court in this matter fails to take into account the different statutory language and purpose of the IDEA, Section 504 and the ADA. The stated purposes and objectives of Section 504 and the ADA are broader in scope than those under the IDEA.  Likewise, the rights, including FAPE rights, and protections afforded to individuals with disabilities under Section 504 and the ADA are greater in scope than those contained in the IDEA.  Moreover, these collective rights and protections are complementary, not exclusive, such that seeking and failing to obtain relief under the IDEA does not and should not bar seeking or obtaining of relief under either Section 504 or the ADA.

### A.    The Differing Purposes and Objectives of Section 504, the ADA and the IDEA

#### 1.    The IDEA

The holding that an appropriate Individualized Education Program ("IEP") under the IDEA automatically satisfies the requirements of Section 504 and the ADA ignores the critical difference in the statutory purposes of the IDEA, Section

504, and the ADA. One of the main purposes for enacting the IDEA was "to ensure that all children with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Unlike Section 504 and the ADA, *see infra* at pp. 6-9, the IDEA was not designed to "serve as a tort-like mechanism for compensating personal injury." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 125 (1st Cir. 2003) (addressing the IDEA, Section 504 and ADA claims).

Specifically, the IDEA requires that the states provide eligible students with a FAPE: "special education and related services that – (A) have been provided at public expense, under public supervision direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title." 20 U.S.C. § 1401(9).

At its heart, the IDEA is a remedial statute designed to redress perceived obstacles to education by providing additional programs or services to individual students with qualifying disabilities in order to help the individual student achieve

certain individualized goals. [1]  It is individual-specific and focuses on the identification of a qualifying disability and the development of an IEP in order to provide special or additional services or accommodations meant to achieve the goals set forth in the IEP.  The IEP then guides the school and student with regards to modified educational goals and means and accommodations to achieve those goals.

Relying upon the statutory language and legislative history of the IDEA, the Supreme Court has held that the IDEA:

> was designed to fill the need identified in the House Report -- that is, to provide a "basic floor of opportunity" consistent with equal protection -- neither the Act nor its history persuasively demonstrates that Congress thought that equal protection required anything more than equal access. Therefore, Congress' desire to provide specialized educational services, even in furtherance of "equality," cannot be read as imposing any particular substantive educational standard upon the States.

*Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200 (1982).

---

[1] The child's annual goals, including academic and functional goals, are designed to address the child's disability and related needs so as to enable the child to participate in and make progress in the general education curriculum aligned with the state's academic content standards established for all students. 34 C.F.R. § 300.39.  Through special education and related services (as outlined in the IEP) students with disabilities are enabled to become proficient and advanced in the state's academic content standards. 20 U.S.C. § 1401(9)(B); 20 U.S.C. § 6311(B); 34 C.F.R. § 200.1(a),(b),(c); *see also* 29 U.S.C. § 794, 34 C.F.R. § 104.4.

Thus, an IEP is intended to provide that the student with a disability achieves meaningful educational progress. *Rowley,* 458 U.S. at 206-207 (FAPE under the IDEA requires an IEP to be "reasonably calculated to enable the child to receive educational benefits.").[2]

## 2.    Section 504 and the ADA

In contrast to the IDEA, Section 504 and the ADA are broad civil rights statutes. At their core, these are anti-discrimination statutes and effective participation laws established to create a "level playing field," eliminate barriers to entry and equal participation, and ensure comparable treatment as between disabled and non-disabled individuals. *See* 29 U.S.C. § 794 and 42 U.S.C. § 12132. Section 504 prohibits recipients of federal funding, including public school districts, from engaging in disability discrimination. 29 U.S.C. § 794(a), (b)(2)(B). The ADA prohibits all public entities from discriminating against individuals with disabilities. 42 U.S.C. § 12132.

-----

[2] While the IEP is an educational program individualized for a specific student, the overall goal of the IDEA is the same level of progress among students with a disability, on an aggregate level, as there is among non-disabled students. The State Performance Plan, mandated by the IDEA, does, in fact, expect "uniform levels of achievement"- i.e., the targets for the percent of students with disabilities expected to score proficient or advanced on state assessments – that reflect the proficiency targets (known as annual measurable objectives ("AMOs")) established by the State for all students. 20 U.S.C § 1412(a)(15)(A)(ii). In fact, under the current No Child Left Behind Act, States are not permitted to have differentiated AMOs for different groups of students. 20 U.S.C. § 6311(b)(1)(B).

Section 504 provides, *inter alia*, that its purpose is to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society.  Specifically with respect to education, Section 504 imposes greater obligations on public schools than provided for by the IDEA.  Section 504 requires public school systems who receive federal funds to "provide FAPE" to each "qualified handicapped person," and defines "appropriate education" as: "regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of [34 C.F.R. §§] 104.34, 104.35, and 104.36."   29 U.S.C. § 794(b)(2)(B); 34 C.F.R. § 104.33(a),(b)(1).  Thus, Section 504's definition of FAPE is different than the FAPE definition under the IDEA. *Compare*, 20 U.S.C. § 1401(9).  In particular, the Section 504 FAPE definition requires that the aids and services provided must  be designed to "meet the educational needs of handicapped persons *as adequately* as the needs of the needs of the nonhandicapped persons are met." 34 C.F.R. § 104.33(b)(1) (emphasis added).

The ADA was enacted, *inter alia,* to ensure the federal government enforces the standards of the ADA;

> (1) to provide a clear and comprehensive national
> mandate for the elimination of discrimination against

individuals with disabilities; [and]

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities ….

42 U.S.C. § 12101.

Further, there is a specific regulation under the ADA that governs the accessibility of communications.  During the relevant time period, ADA regulation 28 C.F.R. § 35.160 [3] specifically provided:

(a) A public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

(b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities … an equal opportunity to participate in, and enjoy the benefits of, a  service, program, or activity conducted by a public entity.

(2) In determining what type of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities.

In a case such as this, where Section 504's FAPE requirements and the ADA regulations undeniably create substantively higher standards for non-discrimination than the mere basic floor of opportunity set out in the IDEA, it is not appropriate to conflate the standards of these separate statutory schemes.  As discussed below,

_____

[3] Effective March 11, 2011, the regulation was amended to provide more detail to a range of definitions.

this Court and many others have recognized that Section 504 and the ADA establish different requirements and provide access to remedies not available under the IDEA. *See infra* at pp. 13-15, discussing, *e.g.*, *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008) (pointing out that while similar, the FAPE requirements under the IDEA and Section 504 "contain significant differences"); *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 876 (9th Cir. 2011) (recognizing that the IDEA is not intended to shield school officials from liability *independent* of the IDEA and relief *different* from what is available under the IDEA); *see also Dowler v. Clover Park Sch. Dist.*, 258 P.3d 676 (Wa. 2011) (exhaustion requirement of the IDEA need not be satisfied before tort-like remedies are sought under state anti-discrimination laws).

### B. Under General Principles of Statutory Construction, the District Court's Finding that the IEP Satisfied FAPE Under the IDEA does not Eliminate K.M.'s Section 504 or ADA Claims

The cardinal rule of statutory construction is that "no provision should be construed to be entirely redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988); *see also In re Lowenschuss*, 171 F.3d 673, 683 (9th Cir. 1999) (rejecting interpretation that would render portion of a statute as "meaningless surplussage"); *Beisler v. Commissioner of Internal Revenue*, 814 F.2d 1304, 1307 (9th Cir. 1987) (courts "should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress"); *Nieto*

*v. Ecker*, 845 F.2d 868, 873 (9th Cir. 1988) (interpreting a statute which renders a provision superfluous would be "contrary to a fundamental canon of statutory construction").

No provision of the IDEA, the ADA, or Section 504 provides that the existence of an otherwise valid IEP under the IDEA bars access, to or relief for claims of unlawful discrimination under, Section 504 or the ADA. On the contrary, Congress expressly clarified the limits of the IDEA in 20 U.S.C. § 1415(l):

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available this subchapter, the procedures under subsections (f) and (g) of the section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

In *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008), this Court held that this plain statutory text preserves all rights and remedies under the Rehabilitation Act. *Id.* at 934. Section 504 expressly forbids exclusion of a student with a disability from "participating in, be denied the benefits of, or be subjected to discrimination" while in public school program. 29 U.S.C. § 794(a). Here, K.M.'s claims under Section 504 and the ADA went beyond her IDEA claims that she was

denied FAPE – they also included claims that she was discriminated against because of her disability, a separate violation distinct from a claim that the IEP was inadequate.

Under the ADA, it is unlawful discrimination to fail to ensure that communications with students with disabilities are as effective as with students without disabilities. The ADA imposes an even higher standard, requiring the public entity to "give *primary consideration* to the request of the individual with disabilities. 28 C.F.R. § 35.160(b)(2). The refusal to provide the computer assisted real time transcript ("CART") – K.M.'s requested communication method – was unlawfully discriminatory denying K.M. access to classroom discussions and video presentations.

In interpreting these statutes and the implementing regulations, the provision found in 34 C.F.R. § 104.33(b)(2) has apparently led to some of the confusion in earlier opinions, which summarily addressed the issue of treating the IDEA FAPE and Section 504 FAPE as the same. This section provides:

> Implementation of an [IEP] developed in accordance
> with [IDEA] is *one means* of meeting the standard
> established [by Section 504's "as adequately"
> regulation].

34 C.F.R. § 104.33(b)(2) (emphasis added). Here, although the District Court's analysis supporting its rejection of K.M.'s Section 504 claim (and by extension,

her ADA claim as well) is cursory at best, and it seems apparent that its rationale is similarly based on a misapplication of this regulation.

It is improper to interpret Section 104.33(b)(2) to automatically provide FAPE under Section 504 merely because an IEP provides FAPE under the IDEA. Such a reading would render the "as adequately" language in Section 104.33(b)(1) as mere surplussage and ignore the express intent of Section 504 – to eliminate discrimination against individuals with disabilities. *See* Mark C. Weber, "A New Look at Section 504 and the ADA in Special Education Cases," TEXAS JOURNAL ON CIVIL LIBERTIES & CIVIL RIGHTS, Vol. 16:1 (Fall 2010), pp. 20-21. To extend this analysis to also bar K.M.'s ADA claim would similarly negate the ADA regulation in 28 C.F.R. § 35.160 governing accessibility of communications.

Section 104.33(b)(2) simply refers to the procedures and mechanisms of the IDEA and the design of an "as adequate plan" in an IEP that complies with Section 504 and is written with parental consent and all of the other considerations extensively set forth in the IDEA. *Id.* Another possible harmonization of these sections is to find that the *Rowley* standard is a floor for the "as-adequate" analysis required by Section 104.33(b)(1), rather than as a ceiling. *Id.* Under either of these harmonious readings, the finding that FAPE was satisfied under the IDEA should not end the inquiry for the Section 504 and ADA claims. *See infra*, at pp. 18-22.

**II.** **The Statutes And Regulations That Entitle Students To Separate And Distinct Protections Under The IDEA, Section 504 And The ADA Cannot Be Conflated Or Abrogated By Interpretive Court Opinions**

**A.** **Court Precedent Recognizes Separate and Distinct Rights and Remedies under the IDEA, Section 504 and the ADA**

When, as in this case, there are clearly defined obligations under Section 504 and the ADA that are *greater than* the basic floor of opportunity guaranteed by *Rowley*, the opinions finding the FAPE obligations under all federal statutes to be co-extensive are not persuasive. As this Court has recognized, the requirements under Section 504 and the IDEA are not entirely co-extensive:

> FAPE under the IDEA and FAPE as defined in the § 504 regulations are similar but not identical. When it promulgated its § 504 regulations, the U.S. DOE described them as "*generally* conform[ing] to the standards established for the education of handicapped persons in . . . [IDEA]." Department of Education, Establishment and Title and Chapters, 45 Fed. Reg. 30,802, 30,951 (May 4, 1980) (emphasis added). Although overlapping in some respects, the two requirements contain significant differences.

*Mark H.*, 513 F.3d at 933; *see also Bishop v. Children's Center for Developmental Enrichment*, 2011 U.S. Dist. LEXIS 104664 (S.D. Ohio Sept. 15, 2011) (holding the regulations "do not provide authority that Section 504 claims are necessarily resolved in IDEA proceedings"). The most critical difference is that Section 504 requires a program "*designed* to meet individual educational needs of handicapped persons *as adequately* as the needs of nonhandicapped persons are met." *Mark H.,* 513 F.3d at 933 (emphasis in original), quoting 34 C.F.R. § 104.33(b)(1).

As this Court held in *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir. 2011), courts should look to the relief sought as a guide in determining if the IDEA's requirements apply, emphasizing that the IDEA's requirements are "not intended to temporarily shield school officials from all liability for conduct that violates constitutional and statutory rights that exist *independent* of the IDEA and entitles a plaintiff to relief *different* from what is available under the IDEA." *Id.* at 876.

*Payne*'s recognition of these statutory distinctions and its focus on the nature of the relief sought are a correct application of precedent and are consistent with the IDEA's express terms. *See* 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities …."); *Mark H.,* 513 F.3d at 934 ("The plain text of the statute preserves all rights and remedies under the Rehabilitation Act."). Congress enacted the IDEA amendment provided in 20 U.S.C. § 1415(l) over 25 years ago in response to Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 992 (1984) (superseded by statute), which held that the IDEA's predecessor statute constituted "the exclusive avenue" of relief in cases placing the education of children with disabilities at issue. *Id.* at 1009. The § 1415(l) non-exclusivity provision

"reaffirm[s] . . . the viability of . . . other statutes as separate vehicles for ensuring the rights of handicapped children." *Digre v. Roseville Schs. Indep. Dist. No. 623*, 841 F.2d 245, 250 (8th Cir. 1988).

As one district court aptly noted in rejecting a motion to dismiss Section 504 claims, "Plaintiffs who have either lost or prevailed in administrative proceedings brought under the IDEA may file an independent claim in federal district court for monetary relief under Section 504." *Stephen L. v. Lemahieu*, 2000 U.S. Dist. LEXIS 22305 at*10 (D. Haw. Oct. 18, 2000), *citing Witte by Witte v. Clark County School Dist.*, 197 F.3d 1271 (9th Cir. 1999) (overruled in part on other grounds by *Payne,* 653 F.3d at 871).

Likewise, other courts have properly analyzed the plaintiff's IDEA and Section 504 claims separately. *See, e.g., S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445 (6th Cir. 2008) (analyzing Section 504 and ADA claims even though the plaintiff did not challenge hearing officer's dismissal of the IDEA claims); *M.M. v. Lafayette Sch. Dist.*, 2010 U.S. Dist. LEXIS 133294 at *7-15 (N.D. Cal. Dec. 6, 2010) (dismissing the IDEA claims, allowing the plaintiff to continue pursuing a Section 504 retaliation claim, and holding the Section 504 discrimination claim failed to adequately explain the alleged discrimination).

In light of the foregoing, it is improper to ignore or interpret Section 504 or ADA regulations to support a finding that compliance with the IDEA's FAPE

requirements abrogates a student's distinct rights under Section 504 and the ADA. By express statutory mandate, as recognized in numerous opinions issued by this Court and others, the IDEA does not constitute an exclusive remedy and does not limit or restrict student rights under Section 504 or the ADA.

### B. Portions of Court Opinions that Conflate the Rights and Remedies under the IDEA, Section 504 and ADA Fail to Address the Specific Regulatory Requirements of Section 504 and the ADA

It is true that many courts have, without analysis, conflated the FAPE standard under the IDEA with the anti-discrimination requirements of Section 504 and the ADA. However, those opinions have done so without acknowledging the specific regulatory requirements of the latter statutes, and without making any attempt to harmonize these regulations as the principles of statutory construction require. As one scholar observed,

> [T]here are numerous cases saying that when the student loses on an appropriate education claim under IDEA, the court will not look further to determine if section 504 has been satisfied. These cases, however, rarely even acknowledge 34 C.F.R. § 104.33(b)(1)(i), the "as adequately" regulation, much less analyze its meaning.

*Weber*, at p. 19 & n. 114.

In *Mark H.*, this Court initially analyzed the differences between the IDEA and Section 504, and held a student with a disability who does not receive a FAPE under the IDEA is not limited to IDEA remedies, but rather is entitled to additional remedies for violation of her rights under Section 504. *Id.* at 933, 935 ("In sum,

availability of relief under the IDEA does not limit the availability of a damages remedy under § 504 for failure to provide the FAPE independently required by § 504 and its implementing regulations."). The instant appeal, by contrast, presents the converse scenario – where a student with a disability has not been denied a FAPE under the IDEA, but has been denied the "different" rights protected under ADA and Section 504. Logic would dictate that if students' rights and remedies under ADA and Section 504 are distinct when the IDEA is violated, they must also be distinct when the IDEA is not violated. As discussed above and herein, courts have given this issue short shrift.

For example, *Mark H.* suggests in dicta that the result would be different if the student had received a FAPE under the IDEA. This disconnect largely lies with an overly cursory interpretation of the regulation providing that implementation of IEP developed in accordance with the IDEA is "one means" of meeting the standard of providing education and services that are designed to meet individual educational needs of people with handicaps as adequately as the needs of persons without handicaps are met. 34 C.F.R. § 104.33(b)(2) (referring to standard set forth in 34 C.F.R. § 104.33(b)(1)(i)). Discussing this regulation in dicta, the Court summarily stated that in *Mark H.* "adopting a valid IDEA IEP is sufficient, but not necessary, to satisfy the § 504 FAPE requirements." *Mark H.*, 513 F.3d at 933. In a subsequent opinion, the Court relied on this analysis and held

that "a school may establish compliance with Section 504 by implementing a valid IEP." *A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.,* 627 F.3d 773, 782 (9th Cir. 2010). At no point, however, did the Court in either opinion attempt to harmonize the "one means" regulation with other statutes and regulations that provide students with disabilities with additional rights.

### C. The Statutes and Regulations Should Be Harmonized so that Rights Afforded Students with Disabilities are not Abrogated

Emerging from this incomplete analysis is a dual legal standard that is not supported by the separate statutes and regulations. If a student's rights under the IDEA are violated (and the "one means" regulation therefore does not apply), then courts separately analyze whether a student's distinct rights under Section 504 and the ADA are violated and the student is entitled to its distinct remedies. On the other hand, compliance with the IDEA is deemed to abrogate the student's separate and distinct rights under Section 504 and the ADA, and such claims may be summarily dismissed (based solely on the "one means" regulation). This cursory rationale cannot be reconciled with this Court's precedent which recognizes that the student's rights under the various statutes are separate and distinct. *See, e.g., JG v. Douglas County School District,* 552 F.3d 786, 803 (9th Cir. 2008) ("IDEA is not an exclusive remedy for children with disabilities who complain of failures in their education.")

Rather, Section 504's regulations must be harmonized to afford disabled students the maximum protection that **all** of these statutes provide. As discussed above, the "one means" regulation should be interpreted as being *procedural* in nature, providing that an IEP under the IDEA is one *procedural* means for designing education and related aids or services that meet individualized educational needs of people with handicaps as adequately as the needs of those who do not have handicaps. 34 C.F.R. § 104.33(b)(1)(i), (b)(2). While the IDEA's IEP procedure may be used as a means, Section 504 is still violated if the IEP does not meet Section 504's substantive requirements.

The District Court below erroneously tied and limited K.M.'s Section 504 and ADA rights to a violation of the IDEA. In so doing, the District Court disregarded causes of action created under these separate and distinct laws, such as claims for discrimination, retaliation, failure to provide reasonable accommodations, and failure to provide accessibility to services or benefits. In addition, and most significantly, the District Court failed to even consider the regulations under Section 504 and the ADA that undeniably create entitlement greater than the "basic floor of opportunity" guaranteed by the IDEA. *See* 34 C.F.R. § 104.33(b)(1); 28 C.F.R. § 35.160. Under these circumstances, the District Court's conflation of these statutes and regulations is legal error, warranting reversal of the summary judgment order.

**III. As A Matter Of Public Policy, Dismissing An ADA Or Section 504 Claim Because A Child with A Disability Has Exercised The Right To An IEP Under The IDEA Impermissibly Denies The Additional Protections Entitled To Under The ADA And Section 504**

The IDEA and compliance thereunder look to providing services and programs to meet the educational needs of the individual student with a disability. The ADA and Section 504, however, were established to ensure comparable treatment of individuals with disabilities and those who do not have disabilities. Thus, while the public policies behind the IDEA is to provide appropriate education, the public policy behind the ADA and Section 504 are to *also* ensure non-discrimination of individuals with disabilities as compared to individuals without disabilities, and specifically for Section 504, to provide education to students with disabilities "as adequately" as to students without disabilities. 34 C.F.R. § 104.33(b)(1).

In this case the student is hearing impaired. The IEP in question provided for a mechanism for the student to "hear" the teacher such that she is able to participate in class at a level determined to provide her appropriate access to educational benefit. However, the IEP admittedly *did not* ensure that communications with K.M. were as effective as communications with others, as required by 28 C.F.R, § 35.160(a). It also is uncontested that the IEP did not, "[i]n determining what types of auxiliary aids ands service are necessary, . . . give primary consideration to the requests of the individual with disabilities." 28 C.F.R.

§ 35.160(b). If K.M. were not also eligible under the IDEA, there is no question that the school district's actions would have violated this regulation.

The undisputed evidence establishes that the student was neither able to "hear" the other students in her class, nor participate in the classroom discussions that the other non-hearing impaired students engaged in real time. Specifically, K.M. indicated on several occasions that she was excluded from classroom discussions with other students, and as a result she has been denied equal access to participation and the ability to respond and interact with her classmates in real-time, which are essential to the classroom learning experience. The IEP, which according to the District Court satisfied the IDEA requirements, denied K.M.'s ability to communicate and hence learn from her classmates, which is an important component of her education. This not only violates the ADA regulation cited above but contradicts the text and the spirit of Section 504, which prohibits not only "discrimination" against the disabled, but also "exclu[sion] from...participation in" (here the classroom) solely by reason of a disability, and thereby fails the inclusion and integration purpose of Section 504. 29 U.S.C. § 794(a).

By grouping IDEA, ADA, and Section 504 claims together and summarily dismissing ADA and Section 504 claims simply because a student's IEP has been found to provide FAPE under the IDEA, the District Court lessened the civil rights

and statutory protections afforded to K.M. under the ADA and Section 504 merely because she was also eligible under the IDEA.

This result is unwarranted and not in line with the public policy underlying Section 504 and the ADA. Effectively, it would mean that a child who exercises her rights under the IDEA would be deprived of any higher standards of other laws such as Section 504 and the ADA. A child who does not exercise her rights under the IDEA in silent suffering, however, would be able to benefit from the (potentially higher) standards of Section 504 and the ADA, putting this child in an ironic situation in which she may be better off than a child who – like K.M. – has gone through the IEP process.

In sum, while implementation of an IEP is one of the *procedural* means of putting a student with disabilities on an equal footing with a non-disabled student, it alone does not establish that *substantively*, the needs of the student with a disability are protected "as adequately" as the needs of other people without disabilities, as required by Section 504. See 34 C.F.R. § 104.33(b)(1). Nor does it established compliance with any higher standards of non-discrimination created by specific regulations under the ADA or Section 504.

## CONCLUSION

COPAA offers this brief to inform and advise the Court about the significant negative implications of upholding the District Court's order summarily denying

K.M.'s separate and distinct Section 504 and ADA claims on the sole basis that denial of the IDEA claims require summary denial of the Section 504 and ADA claims.  For the reasons set forth above, COPAA urges this Court to reverse the District Court's order denying K.M.'s Section 504 and ADA claims and remand such claims for further proceeding pursuant to the guidance provided by this Court.

Dated:  January 24, 2012

Respectfully submitted,

/s/ Michael N. Westheimer
Michael N. Westheimer
One of the Attorneys for Amicus Curiae
Council of Parent Attorneys and
Advocates, Inc.

BAKER & McKENZIE LLP
660 Hansen Way
Palo Alto, CA 94304
(650) 856-2400

**Form 6.    Certificate of Compliance With Type-Volume Limitation,
             Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)
      because:

      ☒ this brief contains 5,343_____words, excluding the parts of the brief exempted
      by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

      ☐ this brief uses a monospaced typeface and contains_____ lines of text,
      excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
      and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      ☒ this brief has been prepared in a proportionally spaced typeface using *(state name
      and version of word processing program)* Microsoft Word 2003_____
      *(state font size and name of type style)* 14-point Times New Roman_____, *or*

      ☐ this brief has been prepared in a monospaced spaced typeface using *(state name
      and version of word processing program)* _____
      with *(state number of characters per inch and name of type style)*

      _____ .

      Signature | s/ Michael N. Westheimer

      Attorney for | Council of Parent Attorneys and Advocates, Inc.

      Date | Jan 24, 2012

| 9th Circuit Case Number(s) | 11-56259 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Jan 24, 2012 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Cary K. Quan
DECLUES & BURKETT, LLP
Suite 400
17011 Beach Blvd.
Huntington Beach, CA 92647-5995

Signature (use "s/" format) s/ Robin M. Robledo